UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES A. HARPER,

        Plaintiff,                                    Hon. Robert Holmes Bell

v.                                                      Case No. 1:13-cv-00721-RHB

REDWOOD TOXICOLOGY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION

      This is a diversity action brought by a federal prisoner against a laboratory, alleging negligence. Plaintiff's *pro se* complaint, as amended, claims that defendant Redwood Toxicology ("Redwood") mishandled a urine sample plaintiff submitted during his participation in a residential re-entry program. Specifically, plaintiff alleges that Redwood tested his urine sample, despite the fact that the seal had previously been broken, and that Redwood failed to note the broken seal in its report, ultimately resulting in plaintiff being sent back to prison. Redwood has filed an answer denying the material allegations of the complaint.

      Pending before the Court is Redwood's Motion for Summary Judgment (Dkt. 92), which was referred to the undersigned by the Honorable Robert Holmes Bell for report and recommendation under 28 U.S.C. § 636(b)(1)(B). Plaintiff has filed his response (Dkt. 95), and Redwood has filed a reply (Dkt. 96). Having considered the parties' written submissions, and for the reasons set forth herein, I recommend that defendant's motion for summary judgment be granted.

**Applicable Standards**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Sadie v. City of Cleveland*, 718 F.3d 596, 599 (6th Cir. 2013). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adams v. Hanson*, 656 F.3d 397, 401 (6th Cir. 2011).

A party asserting that a fact cannot be genuinely disputed must support the assertion as specified in Federal Rule of Civil Procedure 56(c)(1). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the respondent assumes the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the respondent may not rest on the mere allegations of his pleadings, but rather, must present "specific facts showing there is a genuine issue for trial." *El-Seblani v. IndyMac Mortg. Servs.*, 510 Fed. Appx. 425, 427 (6th Cir. 2013). "In other words, the movant [can] challenge the opposing party to 'put up or shut up' on a critical issue. After being afforded sufficient time for discovery . . . if the respondent [does] not 'put up,' summary judgment is proper." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the

[respondent].'" *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Davis v. Cintas Corp.*, 717 F.3d 476, 491 (6th Cir. 2013).

Upon the respondent's failure "to properly support an assertion of fact," or "to properly address another party's assertion of fact," the court may consider the fact undisputed for purposes of the motion. FED. R. CIV. P. 56(e)(2). The court may also grant summary judgment "if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3).

## Proposed Findings of Fact

The following facts are beyond genuine dispute. Plaintiff Charles A. Harper is a federal prisoner. On February 5, 2013, he entered a Residential Re-entry Center (Community Alternatives Program) and was scheduled to be released December 7, 2013 (Bureau of Prisons Memo of June 10, 2013, Attach. No. 1 to Pltf's Opp., Page ID# 767).[1] Plaintiff was required to participate in Community Transitional Drug Abuse Treatment prior to his release, during which he was subject to random urine tests to check for illicit substances such as marijuana. (*Id.*)

Cherry Street Health Services ("Cherry Street") administered the drug-testing program in which plaintiff's urine samples were collected. Cherry Street contracted with Redwood to conduct urinalysis on all samples it collected, including plaintiff's. (Def's. Mot. Exh. 2, Page ID# 709.)[2] Among the tests Redwood performs is radioimmunoassay ("RIA") to determine the presence of THC, a metabolite of the active ingredient in marijuana. (*Id.*) When Redwood receives a urine

---

[1] Hereinafter, all references to Attachments are those appended to Plaintiff's Opposition to Summary Judgment (Dkt. 95).

[2] Hereinafter, all references to Exhibits are those appended to Defendant's Motion for Summary Judgment (Dkt. 92).

sample from Cherry Street, a lab employee removes the sample cup from the packaging, checks to ensure the security seal is intact, and confirms that the label on the sample matches the one on the Federal Bureau of Prisons ("BOP") Chain-of-Custody form. (Exh. 5, Page ID# 733 (Resp. to Pltf's Interrog. No. 4(b)).)

Under Redwood's protocols, whenever a urine sample is received with a broken seal, that fact must be noted in several places. First, the BOP' Chain-of-Custody form contains two check-off boxes that allows Redwood's lab employee to separately indicate (1) whether the sample arrived with the seal intact, and (2) whether the label on the sample matches the one on the chain-of-custody form. (Exh. 6, Page ID# 737.) Second, the fact of a broken seal must be noted in the memorandum of record section of Redwood's Intralaboratory Chain-of-Custody form. (Exh. 5, Page ID#s 730, 733 (Resp. to Pltf's Interrog. Nos. 2(k), 4(f) & 4(I))). Third, that information must be included in the "Comments" section of the final test report. (Exh. 1, Page ID#s 699-701 (Resp. to Pltf's Interrog. Nos. 2(c), 4(c) & 5(d); Exh. 5, Page ID# 732 (Resp. to Pltf's Interrog. Nos. 3(l) & 3(p)).

On May 21, 2013, Cherry Street collected a urine sample from plaintiff and sent it to Redwood for testing. (Exh. 6, Page ID# 737.) The sample was assigned tracking number 595695, and Redwood received it on May 23, 2013. (*Id.*) On the BOP Chain-of-Custody form for specimen 595695, both the "yes" and "no" boxes appear to be checked with respect to whether the seal was intact, but neither box regarding the question of whether the labels matched was checked. (*Id.*) Wayne Ross, Redwood's chief toxicologist, explained: "The No block in the 'Seal Intact' section was checked in error, as the check mark was intended for the Yes box of the 'Labels Match' section.

Note that the Yes block in the 'Seal Intact' section is also checked" (Exh. 7, Page ID# 740 (Resp.Pltf's Interrog. No. 1(k)).[3]

Jackie Soundara, Redwood's lab employee who processed specimen 595695 (see Exh. 6), stated that, with respect to specimen 595695, the BOP chain-of-custody form "is inconclusive because both 'Yes' and 'No' boxes appear to be checked" (Exh. 5, Page ID# 733 (Def's Resp. to Pltf's Interrog. Nos. 4(b) & 4(I)). She also stated: "A broken seal was not noted in the Intralaboratory Chain of Custody form because the seal was not broken, and the box indicating that the seal was broken [on the BOP Chain-of-Custody form] was checked in error" (*Id.* (Def's Resp. to Pltf's Interrog. No. 4(I)).

Redwood's chief toxicologist attested to the fact that the final test report for urine sample 595695 does not reflect that it was received with a broken seal, as would have been required by Redwood's protocols (Exh. 1, Page ID# 699 (Def's Resp. to Pltf's Interrog. No. 2(c)). He further stated: "This means that the sample was received with the seal intact" (*Id.*).

Redwood subjected specimen 595695 to RIA testing, which revealed the presence of THC (marijuana) at the level of 233 ng/ml (Exh. 8, Page ID# 744).[4] This information was conveyed to Cherry Creek through a written report on May 24, 2013 (*id.*). The report omitted the date specimen 596695 had been collected from plaintiff (*see id.*). Accordingly, a Cherry Street employee contacted one of Redwood's employees, Deborah Draper, and asked that the test report be resubmitted with

---

[3]A review of the chain-of-custody form reveals that the "Yes" box of the "Labels Match" section is within a quarter of an inch from the "No" box of the "Seal Intact" section. (*See* Exh. 6, Page ID#737.) Accordingly, it is plausible that an individual would accidentally check the "No" box of the "Seal Intact" section intending to check "Yes" box of the "Labels Match" section.

[4]Plaintiff does not challenge Defendant's testing procedures, noting in his deposition that "the assays themselves were solid." (Exh. 4, Page ID# 721 (Pltf's Dep. at 5-6).)

the collection date included (Exh. 7, Page ID# 741 (Resp. to Pltf's Interrog. Nos. 2(a) through 2(c))). Thereafter, Redwood submitted an updated report that contained the collection date, which date had been obtained from the BOP's Chain-of-Custody form (*Id.*; Exh. 9; Page ID# 746).

On May 31, 2013, as a result of the positive test for THC in his urine, a BOP Disciplinary Hearing Officer ("DHO") found plaintiff guilty of using marijuana (Attach. No. 2, Page ID# 767). The DHO sanctioned plaintiff with the loss of 41 days good-time credit (Attach. No. 1, Page ID# 766). The BOP removed plaintiff's December 7, 2013, early release date, and it determined that he was no longer eligible for early-release consideration (Attach. No. 2, Page ID# 767). His projected release date, as of July 14, 2014, is December 7, 2014 (Attach. No. 3, Page ID# 768).

## **Analysis**

Plaintiff alleges that Redwood received his May 21, 2103, urine sample (specimen 595695) with a broken seal, tested it despite the broken seal, and failed to report that fact in its test results (Amended Complaint, ¶¶ 1-2 (Dkt. 75)). Plaintiff also alleges that Redwood knew or should have known that releasing the report without reference to the broken seal would result in his unlawful imprisonment (*id.*, ¶ 4). Plaintiff claims that Redwood's conduct in testing a specimen with a broken seal "constitute[d] willful and wanton misconduct, gross negligence, or in the alternative, negligence" (*id.*, ¶ 5). Plaintiff claims that Redwood's omission of any reference to a broken seal from its THC-positive report "constitute[d] silent fraud, willful and wanton misconduct, and gross negligence" (*id.*, ¶ 6).

Under Michigan law, to prevail on a negligence claim, plaintiff must prove: (1) Redwood owed him a legal duty; (2) Redwood breached that duty; (3) damages occurred; and (4) Redwood's breach was a proximate cause of plaintiff's damages. *See Brown v. Brown*, 478 Mich. 545, 552

(2007). The elements for "gross negligence"[5] and "willful and wanton misconduct"[6] are more onerous. As plaintiff cannot establish even simple negligence, it is unnecessary to address those claims.

To prove "silent fraud," also known as fraudulent concealment, plaintiff must prove: (1) Redwood suppressed the truth with the intent to defraud plaintiff; and (2) Redwood had a legal or equitable duty to disclose the suppressed information. *Lucas v. Awaad*, 299 Mich. App. 345, 363-64 (2013); *see Dailey v. Medlock*, 551 F. App'x 841, 849 (6th Cir. 2014). Moreover, in order to prevail on this claim, plaintiff must do more than simply prove that Redwood failed to disclose information; he "'must show some type of representation by words or actions that was false or misleading and was intended to deceive.'" *Roberts v. Safell*, 280 Mich. App. 397, 404 (2008) (quoting *M&D. Inc. v. McConkey*, 231 Mich. App. 22, 31-32 (1998)).

Redwood asserts that plaintiff cannot prevail on any of his claims, as he cannot establish either (1) that his urine sample (specimen 595695) was received with a broken seal, or (2) even assuming it had been broken, that the failure to report the broken seal was the proximate cause of his return to prison. I agree.

---

[5]*See Maiden v. Rozwood*, 461 Mich. 109, 122-23 (1999); *see also Ormsby v. LTF Fitness Operations Co.*, No. 12-cv-1409, 2014 WL 4064720, at * 4 (E.D. Mich. Aug. 18, 2014). Gross negligence "include[s] ordinary negligence combined with a willful and wanton disregard for public safety." *Wieczorek v. Merskin*, 308 Mich. 145, 149 (1944). Under Michigan law, "[t]he concept of gross negligence is limited to subsequent negligence, such as where one party who knows or by the exercise of ordinary care should know of the precedent negligence of another party, injures that other party by his or her subsequent negligence." 18A MICH. CIV. JUR. NEGLIGENCE § 3, Gross Negligence (2014) (citing *Montgomery v. Department of Natural Resources*, 172 Mich. App. 718 (1988)). Plaintiff has not presented evidence sufficient to support a gross negligence claim.

[6]"Willful and wanton conduct is far more than a greater degree of ordinary negligence, it 'is quasi-criminal and manifests an intentional disregard for another's safety.'" *Foster-Smith v. Spratt*, No. 262483, 2006 WL 505441, *4 (Mich. App. Mar. 2, 2006) (quoting *Ellsworth v. Highland Lakes Development Assoc.*, 198 Mich. App. 55, 61 (1993)).

> **1.   Plaintiff Cannot Establish That Redwood Breached It's Duty Or That It Suppressed The Truth, As He Cannot Establish That The Urine Sample's Seal Had Been Broken Prior To Redwood's Receipt.**

Assuming Redwood owed plaintiff a legal duty to report whether his urine sample arrived with a broken seal, plaintiff cannot sustain his burden of proving a breach of that duty; nor can he prove that Redwood suppressed the truth regarding that issue. There is insufficient evidence in the record for any reasonable juror to find that the seal on specimen 595695 was broken prior to its arrival at Redwood's laboratory.

During his deposition, plaintiff conceded that he was aware of no evidence – other than the BOP Chain-of-Custody form – that indicated the security seal on specimen 595695 was broken at the time Redwood received it (Exh. 4, Plf's Dep. at 18-19, Page ID#s 722-23). Plaintiff also admitted the following: he had no evidence to suggest that any of Redwood's employees tampered with specimen 595695; he had no evidence, nor even any suspicions, regarding how that specimen may have been tampered with; and he had no evidence as to any type of tampering that would have caused a false THC positive result (Exh. 4, Pltf's Dep. at 17-18, Page ID# 722).

That leaves only the BOP Chain-of-Custody form upon which plaintiff must hang his hat. This is the form on which both the "Yes" and "No" boxes appear to be checked with respect to whether the seal to urine specimen 565695 was intact upon Redwood's receipt (Exh. 6; Page ID# 737). Redwood's chief toxicologist explained that the "no" box was checked in error, as it was intended to indicate that the label on specimen 565695 matched that on the BOP Chain-of-Custody form. At most, giving plaintiff the benefit of every reasonable inference, the check marks on the chain-of-custody form are inconclusive as to whether specimen 565695 arrived at Redwood's lab

with the seal intact. But the evidence regarding this issue is not limited to the BOP Chain-of-Custody form.

Redwood has proffered unrebutted evidence regarding its testing protocols.[7] Those protocols require Redwood employees to note the fact of a broken seal in at least three places, one of which is the BOP Chain-of-Custody form. The other two are the Intralaboratory Chain-of-Custody form and the final test report (*see* Exh. 1, Page ID# 699; Exh. 5, Page ID# 732-33). With respect to specimen 595695, there is no such notation on either document (Exh. 1, Page ID# 699; Exh. 5, Page ID# 733).

In light of this evidence, plaintiff cannot sit on his hands. Nor can he rely on his hope that the trier of fact will disbelieve Redwood's account of what happened with his urine specimen. *See Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing, inter alia, *Liberty Lobby*, 477 U.S. at 256-57). Rather, to survive summary judgment, plaintiff must proffer sufficient probative evidence that would permit a jury to find in his favor "on more than mere speculation, conjecture or fantasy." *Lewis v. Phillip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) (citations omitted); *see also Chappell v. City of Cleveland*, 585 F.3d 901, 912 (6th Cir. 2009) (a "hypothetical plausibility" without evidence is insufficient to meet a plaintiff's burden of proof as a matter of law); *Chappell v. GTE Prods., Corp.*, 803 F.2d 261, 268 (6th Cir. 1986) (mere personal beliefs, conjecture and speculation are insufficient to support a triable issue).

Plaintiff has offered his opinion that the checkmark on the BOP Chain-of-Custody form indicating that the seal was intact was not "scored all the way through," giving the appearance that

---

[7]Redwood's toxicology expert, Keenan M. Bora, M.D., opined that "there did not appear to be any abnormalities with [Redwood's] chain of custody" (Exh. 3, Bora Report, Page ID# 717). Plaintiff has offered no contrary opinion.

"someone stopped in the course of whatever they were doing," while the other checkmark was "unequivocally scored all the way through" (Exh. 4, Pltf's Dep. at 21, Page ID# 723; *see also* Pltf's Opp. at 4, Dkt. 95, Page ID# 754). Plaintiff's interpretation of how or why both boxes are checked in the seal intact section of the BOP Chain-of-Custody form is nothing more than speculation and conjecture. It is insufficient to create a triable issue. A dispute over a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 247-48. Conversely, where a reasonable fact-finder could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993).

Plaintiff errs as a matter of law in relying on his assertion that Redwood failed to produce any certified document by Ms. Soundara (the lab employee who filled out the BOP Chain-of-Custody form) to contradict the notation that the seal was broken. It is plaintiff, not Redwood, who bears the burden of production. *See Celotex*, 477 U.S. at 323. Moreover, Redwood did provide plaintiff Ms. Soundara's answers to his interrogatories, which included the following statement: "A broken seal was not noted in the Intralaboratory Chain of Custody form because the seal was not broken, and the box indicating that the seal was broken [on the BOP Chain-of-Custody form] was checked in error" (Exh. 5, Page ID# 733 (Def's Resp. to Pltf's Interrog. No. 4(I))). Redwood's answers to plaintiff's interrogatories were certified as true by Wayne Ross, Redwood's chief toxicologist (*id.*, Page ID# 734), pursuant to Federal Rule of Civil Procedure 33(b)(1)(B), (b)(5).

Plaintiff's failure to make a showing that is "sufficient to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial" mandates the entry of summary judgment. *Id.* at 322-23.

### 2. Plaintiff Cannot Establish That Redwood's Failure To Report A Broken Seal Proximately Caused His Return To Prison.

Even assuming negligence on Redwood's part, plaintiff must prove that its negligence proximately caused his harm (his return to prison). *See Brown*, 478 Mich. at 552. In other words, plaintiff must prove not only that his return to prison would not have happened "but for" Redwood's failure to note the broken seal on his urine specimen (the cause in fact), but also that his return to prison was a foreseeable consequence of Redwood's failure (legal cause).

Under Michigan law, "[p]roximate cause encompasses both cause in fact and legal cause. 'The cause in fact element generally requires showing that "but for" defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal or "proximate cause" normally involves examining the forseeability of consequences, and whether a defendant should be held legally responsible for such consequences.'" *Kernstock v. United States*, 559 F. App'x 428, 432 (6th Cir. 2014) (citing *Craig ex rel. Craig v. Oakwood Hosp.*, 471 Mich. 67, 86 (2004) and quoting *Skinner v. Square D Co.*, 445 Mich. 153, 163 (1994)). Plaintiff has offered no evidence to support either prong of the proximate cause element.

To the contrary, plaintiff has inherently conceded that he is unaware of any BOP regulation or policy that would have prohibited the Disciplinary Hearing Officer (DHO) from considering the urinalysis results from specimen 595695, had its seal been reported broken (*see* Exh. 4, Pltf's Dep. at 23, Page ID# 724). Instead, he simply relies on his interpretation of the Federal Rules of Evidence regarding chain of custody and the authentication of evidence (*see id.*). But plaintiff's legal conclusions are not a substitute for evidence. Without some policy or other evidence to suggest that the BOP was prohibited from considering the urinalysis results, despite a broken seal, he cannot

prove that, "but for" Redwood's failure to note a broken seal, he would not have been returned to prison.

In his response to the pending motion, plaintiff takes issue with Redwood's reference to the Center for Disciplinary Committee (CDC) as the decision maker, noting, correctly, that it was the DHO who found him guilty of using marijuana (Pltf's Opp. at 2-3, Dkt. 95, Page ID#s 752-53). This clarification does not alter the outcome here, as plaintiff has offered no evidence that the DHO would have reached a different decision, assuming DHO had notice that the seal had been broken.

### 3. Plaintiff Is Not Entitled To Additional Discovery.

In response to Redwood's motion for summary judgment, plaintiff argues that he needs additional discovery regarding his claim of "silent fraud" (Pltf's Opp. at 5, Dkt. 95, Page ID# 755). Specifically, he seeks "root data" from Redwood's computer server to explain what he describes as a two-minute discrepancy in the times the test reports were created and transmitted (*id.* at 6-7, Page ID#s 756-57). He also seeks what he refers to as "metadata" from defendant's computer server, which he contends would "indicate if the broken seal was electronically logged and erased" (*id.* at 7-8, Page ID#s 757-58).

Plaintiff was afforded some seven months to conduct discovery. The original six-month deadline for completing discovery, May 30, 2014, was extended at plaintiff's request to June 30, 2014 (Case Management Order, Dkt. 18; 1/17/14 Order, Dkt. 23). The order extending the discovery deadline noted that there would be no further extension absent "extraordinary circumstances" (1/17/14 Order). The Court denied each of plaintiff's three subsequent motions to further extend the discovery deadline, finding that plaintiff had failed to show "good cause" for an extension (2/18/14 Order, Dkt. 29; 5/20/14 Order, Dkt. 63; 6/17/14 Order, Dkt. 78). Moreover, the

Court has repeatedly denied plaintiff's motions to compel the "metadata" he now says he needs to avoid summary judgment (*see* 5/9/14 Order, Dkt. 56; 6/20/14 Order, Dkt. 83; 10/3/14 Order, Dkt. 99). Plaintiff's motions to compel were denied because the sworn testimony of Redwood's chief toxicologist established that the evidence plaintiff seeks does not exist (*see* Affidavit of Wayne Ross, Dkt. 53-2).

Having reviewed the issues raised in plaintiff's motion to compel the "metadata," the Honorable Robert Holmes Bell overruled plaintiff's objections to the order denying plaintiff's third motion to compel the "metadata" (11/4/14 Order, Dkt. 103). Judge Bell noted: "Plaintiff did not offer any new evidence to persuade the Court that its previous rulings on this same motion were incorrectly decided" (*id.*). Plaintiff still has not offered any reason to alter the Court's previous decisions regarding this matter.

Plaintiff has been afforded adequate opportunity to conduct discovery. He has failed to make a showing sufficient to establish a triable issue as to whether the seal on specimen 595695 was broken prior to its arrival at Redwood's laboratory. He has also failed to proffer any evidence that any of Redwood's actions, or inaction, proximately caused his return to prison. Accordingly, Redwood is entitled to summary judgment. *See Celotex*, 477 U.S. 322-23.

Respectfully submitted,

Date: November 26, 2014               /s/ Phillip J. Green
                                      PHILLIP J. GREEN
                                      United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *United States v. Branch*, 537 F,3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). General objections do not suffice. *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).